**In re RALPH FABER TRUST, Don B. Eppler, Trustee, Debtor.**

**Bankruptcy No. 90–05173.**

United States Bankruptcy Court,
D. North Dakota.

April 23, 1990.

Joseph A. Vogel, Mandan, N.D., for debtor.

Brad Sinclair, Fargo, N.D., for FCB of St. Paul.

Wayne Drewes, Fargo, N.D., Trustee.

## MEMORANDUM AND ORDER

WILLIAM A. HILL, Bankruptcy Judge.

Before the court is a Motion by Farm Credit Bank of St. Paul (FCB) for dismissal or relief from stay. Both remedies are premised upon the argument that the Debtor, Ralph Faber Trust, is a land trust and as a consequence does not qualify for relief under Chapter 12 of the Bankruptcy Code.

Relief under Chapter 12 is available only to a family farmer with regular annual income. 11 U.S.C. § 109(f). The definition of "family farmer" set forth in section 101(17) includes:

(B) Corporation or partnership in which more than fifty percent of the outstanding stock or equity is held by one family, or by one family and the relatives of the members of such family, and such family or such relatives conduct the farming operation, and ...

It is the Debtor's position that it qualifies as a corporation since that term as defined by section 101(8)(A)(v) includes business trusts. It believes that not only does it qualify as a business trust but that in such capacity it "conducted" a "farming operation" as that term is defined in section 101(20) of the Code. FCB while acknowledging that a business trust, because it is included in the Code definition of corporation, may avail itself of relief under the Code, argues that the Debtor is nothing more than a land trust which have been historically denied bankruptcy relief. A

hearing was held before the undersigned on April 19, 1990.

### 1.

Ralph Faber prior to his death in 1988 was a farmer in Ransom County, North Dakota. In order to ensure the longevity of the farming operation in 1983 he created an irrevocable trust called the "Ralph Faber Trust" for the express purpose of holding, managing, investing and re-investing the trust property until the death of his last surviving child. The trust's corpus consists of twelve quarters of farmland of which 1,700 acres are tillable, a pivot irrigation system and a small bank account. Beneficiaries of the trust are Ralph's son, Robert Faber, and Robert's four children who are the grandchildren of Ralph Faber. Upon expiration of the trust term (death of Robert Faber) all property and income is to be distributed to the grandchildren. Article III of the Agreement provides that any person, with consent of the trustee, may add property to the estate. Article IV accords to the trustee the power to acquire, invest, and sell trust property, borrow money, extend mortgages, improve the property and lease the property.

The trust agreement bears no reference to the ability or authority to farm the land and indeed the trust owns no farm equipment and has never actively farmed the property itself but has, throughout the course of its existence, rented the land to trust beneficiaries and others.

In 1987, 1988 and 1989, the year immediately preceding the Chapter 12 filing, all the farmland was cash rented to Robert Faber and his son, Charles Faber. In 1985 the Fabers rented all but 737 acres which were leased on a crop share basis to a third party. In 1986 seventy-five percent of the land was cash rented to a third party and the balance rented to Robert. For the current 1990 farm year Robert and Charles are cash renting 168 acres and leasing another 292 on crop share. Four hundred eighty acres are cash rented to a third party and 701 acres are enrolled in CRP. Historically the trust has made no decisions regarding cultivation, seeding, planting or harvesting. All farming decisions as well as the actual farming itself has been left to Robert and Charles or third parties. The Fabers contract directly for all costs of production including feed, seed, and fuel except that in 1989 upon advice of the trust's attorney and in contemplation of Chapter 12, a seed bill invoiced to the Fabers was paid by the trust using money given it by the Fabers for that purpose. The CRP acres will be managed by Robert and Charles and they, rather than the trust, will bear all associated costs. The trust filed fiduciary income tax returns and for 1989 shows farm rents as the only source of income except for the seed bill it paid at the behest of its attorney. Likewise, the only source of income for 1988 and 1987 was farm rents. The trustee conceded that the trust has never itself actively farmed the land and has incurred no risk save for the possibility of not receiving rents.

The trust borrowed $500,000.00 from FCB in 1984 using the proceeds to pay off an existing mortgage at a local bank, to purchase an additional quarter of land Ralph Faber had contracted for, and to purchase an irrigation system. This indebtedness, which now totals $716,260.00, is secured by a mortgage on all twelve quarters which the trust in its Chapter 12 petition filed on March 2, 1990, has valued at $384,000.00.

### 2.

The inclusion of a business trust in the definition of a "corporation" and the distinction between business trusts and non-business trusts is not new. Section 1(8) of the former Bankruptcy Act provided that the term "corporation" include any business conducted by trustees providing the beneficial or ownership interest is evidenced by a certificate or other written instrument. 11 U.S.C. § 1(8). In *Associated Cemetery Management, Inc. v. Barnes*, 268 F.2d 97, 103 (8th Cir.1959), the circuit believed that the only trusts included by section 1(8) in the definition of "corporation" were those which were associations of beneficiaries formed for the purpose of conducting business. The sense was that organizations, whether incorporated or not,

are regarded as within the scope of a corporation for bankruptcy purposes if they are associations of persons joined together for a common business or commercial purpose and which have conducted their affairs in a fashion reminiscent of a corporation. *Pope & Cottle Co. v. Fairbanks Realty Trust,* 124 F.2d 132, 134 (1st Cir.1941). Although section 101(8)(A)(v) of the present Code eliminates any requirement that the beneficial interest be evidenced by a certificate or other writing, the essential concept remains and courts, when called upon to determine whether a trust qualifies as a business trust, are focused upon the powers granted to the trustee and whether the express purpose of the trust was principally profit or protection of the trust property. Generally, if the purpose is protection and preservation of the trust res, it is a non-business trust and ineligible for bankruptcy relief. *In re Universal Clearing House Co.,* 60 B.R. 985 (D.C. Utah 1986). The distinction between the two is aptly illustrated in *In re Treasure Island Land Trust,* 2 B.R. 332 (Bankr.M.D.Fla.1980) which said:

> "The basic distinction between business and non-business trusts is that business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; the object of a non-business trust is to protect and preserve the trust res. The powers granted in a traditional trust are incidental to the principal purpose of holding and conserving particular property, whereas the powers within a business trust are essential to its purpose. It is the business trust's similarity to a corporation that permits it to be a debtor in bankruptcy."

2 B.R. 332 at 334.

Land trusts, that is those which have as their principal purpose of preservation of property held for the benefit of beneficiaries have never been recognized as business trusts. *In re Cahill,* 15 B.R. 639 (Bankr.E.D.Pa.1981); *Matter of Cohen,* 4 B.R. 201 (Bankr.S.D.Fla.1980). In the case at bar, the principal asset of the trust is the twelve quarters of farmland which the trust is to manage for the benefit of the grantor's son and the grandchildren. All powers and duties of the trust relate to the preservation of the farm. The trustee himself testified that the purpose was to ensure the farm's longevity. Although the lands are being farmed by the beneficiaries and others, that farming enterprise is not the business of the trust. Even if the court believed the trust was a business trust rather than a land trust, it would have to reach the conclusion that the actual business of farming was being conducted by others. All farming decisions, and all hands on responsibilities were vested in persons to whom the trust leased the land. In addition to the entity restrictions of section 101(17), the section additionally requires that the entity filing for Chapter 12 relief have conducted the farming operation. In the context of a corporation or entity encompassed within that term, the entity must at a minimum play an active role in the farming operation taking place. *In re Tim Wargo & Sons, Inc.,* 869 F.2d 1128, 1130 (8th Cir.1989); *In re Dakota Lay'd Eggs,* 57 B.R. 648, 656 (Bankr.D.N. D.1986). This court appreciates that Ralph Faber intended to preserve the farm for his heirs but this good intention is not determinative of the issue. Nor is the fact that the Fabers' heirs happen to have at times leased the land from the trust. A trust is a separate and distinct entity under North Dakota law and a valid trust is a present and unequivocable disposition of the property. *Matter of Estates of Binder,* 386 N.W.2d 910 (N.D.1986). The farming operation has not been at any time conducted by the trust but rather by parties who leased the trust res. It is tempting, given the family relationships involved, to place emphasis on the family nature of the Ralph Faber Trust and the fact that it is family members who from time to time have farmed the trust lands, but lower courts have been admonished not to strain the Code definitions in order to grant statutory family farmer status to entities that do not squarely meet Code requirements. In *In re Easton,* 883 F.2d 630 (8th Cir.1989) the court said, "Courts are not free to confer statutory family farmer status upon indi-

viduals simply because they reside on a farm and carry on some farm related tasks". So too, the happenstance of the trust leasing its property to its farmer beneficiaries who are heirs of the grantor does not itself confer family farmer status upon the trust itself.

Accordingly, the court holds that the Debtor is not a business trust within the purview of section 101(8)(A)(v), but rather is a land trust and therefore does not qualify as a corporation to which relief is available under Chapter 12 of the Code.

The motion for Farm Credit Bank for dismissal is GRANTED. The case is DISMISSED.

SO ORDERED.