### In re HEMEX LIQUIDATION TRUST (Debtor).

### Bankruptcy No. 91BK–80511.

United States Bankruptcy Court,
W.D. Louisiana,
Lake Charles Division.

June 28, 1991.

---

Kenneth Michael Wright, Lake Charles, La., for debtor, Hemex Liquidation Trust.

Alan D. Weinberger and Paul J. Mirabile, New Orleans, La., for movant, Baxter Healthcare Corp.

## REASONS FOR DECISION

HENLEY A. HUNTER, Bankruptcy Judge.

This matter came on for a hearing on June 20, 1991, on the Motion of Baxter Healthcare Corporation to Dismiss or Convert. Evidence was adduced and the matter was taken under advisement. For reasons which follow, this case will be dismissed. This is a Core Proceeding pursuant to 28 U.S.C. Section 157(b)(2) inasmuch as it involves the administration of the debtor's estate under Subsection (A) and other proceedings affecting the adjustment of the debtor-creditor relationship under Subsection (O). This Court has jurisdiction pursuant to 28 U.S.C. Section 1334 and by virtue of the reference by the District Court pursuant to Local District Court Rule 22.1 incorporated into Local Bankruptcy Rule 1.2. No party at interest has sought to withdraw the reference to the Bankruptcy Court, nor has the District Court done so on its own motion. This Court makes the following findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Background

This case was filed as a voluntary case under Chapter 11 on April 9, 1991. Debtor is a liquidating trust which was formed after its predecessor, Hemex Scientific, Inc., sold its entire business to American Hospital Supply Corporation in 1986 pursuant to a document known as an "Assets Purchase Agreement." The assets of the seller consisted primarily of a patent and FDA approval for the manufacture and

sale of the Duramedics TM heart valve. The sale also conveyed Hemex Inc.'s inventory, manufacturing and distribution facilities. The overall sales price was in excess of $40 million dollars. A portion ($4.4 million) of the sales price was reserved under the contract and segregated into two funds; one for $400,000.00, styled the "product liability fund," and another for $4,000,000, styled the "general liability fund." Procedures were established for claims against such funds and various dates established for distribution of payments due the seller. Interest payments were made until December of 1989.

Suit was then instituted in the 14th Judicial District Court for Calcasieu Parish for approval of a settlement. The suit originated as a request for instructions concerning a trust and, debtor asserts, was instigated in its name but at the behest of Baxter. The settlement was not approved and the suit has since been amended to seek damages for unfair trade and competitive practices and breach of contract. The suit was removed to the United States District Court for the Western District of Louisiana under Civil Action Number 91–8042[1]. Baxter filed suit for declaratory and other relief in the Nineteenth Judicial District in Lake County, Illinois under Docket No. 90 MR 609, which was ultimately removed to the United States District Court for the Northern District of Illinois under No. 91C2814. See Exhibits B (1–4).[2]

In Debtor's own words, its existence is described as follows:

"Hemex is a liquidating trust. It formed for three purposes. Firstly Section 11.5 of the Assets Purchase Agreement required Hemex to change its name and suspend operations. Secondly, certain tax laws were scheduled to expire at the end of calendar 1986, requiring immediate liquidation of the seller. Thirdly, aspects of the sale remained executory and the trust provided a vehicle to enforce those provisions. The trust continued primarily to receive the funds contractually owed to it by Baxter and perform other liquidation functions. Hemex in fact has no routine business. It does not conduct a trade, sell merchandise, or perform services to the public. It has no need for day-to-day employees. It has, however, performed a variety of tasks. These include assisting Baxter in the defense of third-party claims, taking action against the sellers' former attorney to preserve confidential information, defending claims commenced by Carbomedics, Inc., filing tax returns, negotiating with Baxter, dealing with insurers, and obtaining legal advice for it and its beneficiaries. Its attorneys, accountants and consultants provide many of the services. Its co-trustees and beneficiaries also expend significant time and effort for Hemex. It owes a relatively little unsecured debt; however, it is not true that it exists solely at this time to be sued or to sue in a dispute arising from Baxter's purchase in 1986." Memorandum in Opposition filed June 17, 1991, page 4.

### B. Contentions of the Parties

Baxter seeks alternatively dismissal or conversion alleging (1) that the sole purpose of the filing was the invocation of the automatic stay to frustrate the Illinois litigation; (2) that debtor has no ability to effectuate a plan of reorganization in that it conducts no business and exists only to "wind … up the affairs of its predecessor" and cannot fund a plan; (3) the case will not result in debtor's rehabilitation, but

---

**1.** This matter was referred to this Bankruptcy Court by order of the District Court dated May 2, 1991, due to its relationship to the bankruptcy case. Pursuant to a Report and Recommendation dated June 19, 1991, the undersigned reported and recommended that the reference be withdrawn due to the request of Baxter for a jury trial. Pursuant to the ruling in Civil Action No. 89–2781 "O", *C. Creig Brignac, et al, vs. Roppollo Petroleum, et al,* the Honorable Judge John M. Shaw held that withdrawal of the reference to the bankruptcy court was required where a party had requested a jury trial, based upon the holding in *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

**2.** The Background section is adapted from Debtor's Memorandum in Support of Opposition to Motion to Dismiss or Convert Chapter 11 Filing filed June 17, 1991.

rather in losses consisting of the legal fees generated by the filing; and (4) the disputes between debtor, its principal shareholders and Baxter should be resolved in the pre-filing litigation.

In closing argument, counsel for Baxter asserts that debtor improperly sought relief herein inasmuch as the latter's memorandum filed in connection with this hearing asserts that "[a]lthough it has sought this Court's protection in fulfilling its function, it will carry on with or without the protection of the Bankruptcy Court, and a [sic] successfully enforce its claims against Baxter and Carbomedics...." Memorandum in Opposition, page 15.

Debtor, in turn, contends that (1) Baxter lacks standing to challenge the filing of this case, asserting that Baxter is not a party at interest; and (2) this case was, indeed, filed in good faith.

### C. Summary of the Evidence

Baxter's evidence in support of its Motion consisted of its offering of copies of pleadings from the Illinois Court, Exhibits B(1–4). Baxter particularly would have this Court note its argument in B–4 that removal efforts by Hemex and the individual defendants in those proceedings, Russell C. Chambers, Jerome Klawitter, Julius Tabin, and Edwin Hunter, are seeking to litigate the matter in Louisiana rather than Illinois, and, therefore, twice sought removal in those proceedings without knowing if Baxter would even oppose the first effort, the latest effort being based on the alleged subject matter jurisdiction of the Federal Court due to the connection to the bankruptcy case. At the conclusion of Baxter's evidentiary offerings, debtor moved for a directed verdict relying on Federal Rule of Civil Procedure Rule 50. Since that rule relates to jury trials and is inapplicable to Bankruptcy Courts pursuant to Bankruptcy 9014, the motion would have been properly sought as a motion for involuntary dismissal under Rule 41. In any event, the Court deferred any ruling on this request until the close of the evidence.

Mr. Edwin Hunter testified on behalf of debtor. He is a co-trustee of debtor and elucidated the following reasons for the filing:

(1) Debtor was involved in litigation in Texas with Carbomedics and Baxter in addition to the Illinois litigation, the multistate nature of which required employment of several attorneys reducing its resources;

(2) Product liability litigation was threatened or had been instituted resulting from Baxter's having indicated it would dishonor indemnity arrangements in the contract;

(3) A number of creditors of the debtor were professionals originally engaged at Baxter's request, whose services were rendered on credit and were pressing for payment;

(4) One of debtor's motivations was the possible rejection under 11 U.S.C. § 365 of the contract to allow the resumption of business, considering the debtor's contention of non-performance by Baxter. In this regard, Hunter testified Baxter had "shot the product in its foot."

(5) The multitude of beneficiaries under the trust (over 200), including residents of foreign countries, presented difficulties for management of claims with no non-bankruptcy forum to approve the ultimate disposition of any settlement.

(6) The possibility of other claims by Hemex including actions against Carbomedics, the investigation of which was proceeding.

Hunter, a practicing attorney, likened the debtor's overall situation to that of Johns–Manville (presumably *In re Johns–Manville Corporation,* 36 B.R. 743 (Bankr. S.D.N.Y.1984)), in that debtor was exposed to a multitude of claims. He testified that debtor owned no real estate, had no assets burdened by liens or claims of secured creditors, no employees in the "traditional sense," no income or sources of same, made no adequate protection payments, had no foreclosures pending, nor any judgments it had "lost" or bonds it could not post. He indicated no decision had been made whether to propose a liquidating plan or attempt to recover the "valve company" under Section 365. He also alluded to a threat by Baxter to "use hundreds of law-

yers" and large quantities of "paper" to "drive" debtor into bankruptcy.

Hunter referred to various sources of funding which had financed "facets" of the litigation to date including Dr. Klawitter and Russell C. Chambers, other Co–Trustees. Hunter asserted that the purpose of the trust was not only to liquidate but to protect and maximize the return to the beneficiaries, despite allegations in the Louisiana litigation describing debtor-defendant as follows:

"A liquidating trust existing under the laws of the State of Louisiana, established to pay the debts, collect receivables, and administer the estate of the dissolved corporation Cicatrix, Inc. f/k/a Hemex Scientific, Inc., a liquidated corporation, formerly organized under the State of Louisiana...." Exhibit B–5.

Hunter acknowledged that the patents to the heart valve had previously been transferred to the purchaser, but insisted the "essence of the contract" had not been performed, notwithstanding the fact that the bulk of the purchase price had been paid, pointing out that the reserved, outstanding portion of $4.4 million bore interest.

Hunter acknowledged that, from the debtor's perspective, litigation in Louisiana was more efficient. Hunter noted that, in Hemex's view, Baxter has Hemex's money.

Hunter further testified to some difficulty in determining potential claimants for product liability claims from Baxter, acknowledging that those claims were presently contingent and unliquidated. He acknowledged that debtor's only cash on hand as shown in the schedules was $48.00. He testified that debtor's cash previously exceeded $300,000.00.

Having reviewed the evidence, these Reasons for Decision now address the issues of law, beginning with the standing issue.

### D. Standing

■ This Court finds no merit in Debtor's contention that Baxter lacks standing as a party in interest under 11 U.S.C. § 1109(b). In its memorandum, debtor asserts that Baxter has no right to payment or claim, seizing upon Baxter's alleged "judicial admission" that it is not a creditor or contingent creditor (see Baxter's memorandum at page 7), and relying on *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985) for the assertion that Baxter lacks any right to payment. In *In re Ionosphere Clubs, Inc.*, 101 B.R. 844 (Bankr.S.D.N.Y.1989), the Court noted that the determination of a "party in interest" status must be determined on a case by case basis. In this matter, debtor listed Baxter on Schedule A–3 for "Unsecured Claims" as the holder of a disputed claim for $10,000,000.00. On June 14, 1991, debtor filed a Motion to Amend Schedules to delete this claim. This self-serving motion notwithstanding, even if debtor had never listed Baxter as a creditor, on these facts, with debtor contemplating a possible plan based on the rejection of the asset purchase contract under 11 U.S.C. § 365, debtor's contention has no merit and is rejected.

### E. Eligibility for relief

These Reasons for Decision now turn to the issue of the propriety of this filing. Baxter maintains that the burden of proof of good faith is on the debtor, citing *In re Business Information Co.*, 81 B.R. 382 (Bankr.W.D.Pa.1988); *Stage I Land Co. v U.S. Housing & Urban Development Department*, 71 B.R. 225 (D.Minn.1986). *See also Marine Harbor Properties, Inc. v. Manufacturers Trust Company*, 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64 (1942) dealing with a filing under Chapter X of the Bankruptcy Act. *Compare: Matter of Century City, Inc.*, 8 B.R. 25 (Bankr.D.N.J.1980). As will appear below, these Reasons for Decision conclude that debtor is ineligible for relief on other grounds; therefore further consideration of the burden of proof on the good faith issue is not required.

Since Baxter heavily relies on its contention that debtor has no ongoing business to reorganize, debtor counters that the particular stigmata of bad faith factors as discussed in *In the Matter of Little Creek Development Co.*, 779 F.2d 1068 (5th Cir.

1986), *accord, In re Winshall Settlors Trust*, 758 F.2d 1136 (6th Cir.1985) have been "put to rest" by the holding of the United States Supreme Court in *Sheldon Baruch Toibb v. Stuart J. Radloff*, — U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991). *Toibb* holds that an *individual* debtor need not be engaged in business to qualify for relief under Chapter 11 pursuant to 11 U.S.C. § 109, based on *the* analysis of the "plain language" of the section. *Ibid.* emphasis supplied.

■ The undersigned concludes that the "plain language" of the statute, 11 U.S.C. § 109, compels dismissal here, without reaching a determination of bad faith factors, based on the inescapable conclusion that this "non-business" trust is not entitled to relief *ab initio.*

As the Supreme Court observed in *Toibb* "[o]nly a person that may be a debtor under Chapter 7 of this title ... may be a debtor under Chapter 11 of this title." The availability of chapter 7, in turn, is limited under Section 109(b) to "persons" as defined in Section 101, with certain exclusions not here at issue. Section 101(41) defines a "person" as including an "individual, partnership, and corporation[.]" A "corporation," in turn, is defined to include a "business trust[.]" 11 U.S.C. § 109(9)(A)(v).

Congress recognized the necessity of allowing relief to certain trusts under the Code since they are similar to corporations. Thus, a land trust was held ineligible for relief since it was not a business. *See In re Dolton Lodge Trust No. 35188*, 22 B.R. 918 (Bankr.N.D.Ill.1982), in which the Court noted:

"The debtor here is an Illinois Land Trust and the question arises as to whether this or any land trust may be construed to be a 'Business Trust' as contemplated by Section 101(8)(A)(v) of the Bankruptcy Code or as a 'Partnership' as contemplated by Section 101(30). Business trusts are eligible debtors under the Code apparently because Congress recognized the similarity between business trusts and corporations. In the case *In re Treasure Island Land Trust*, 2 B.R. 332, 5 B.C.D. 1246 (M.D.Bkrtcy. Fla.1980) in holding that a land trust was

not a business trust eligible for Chapter 11 relief the Bankruptcy Court for the Middle District of Florida said:

'... business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; The [sic] object of a non-business trust is to protect and preserve the trust res. . . . It is the business trust's similarity to a corporation that permits it to be a debtor in bankruptcy.'

Therefore, in examining the debtor as an entity the focus should not be on what the debtor is called but rather on what the debtor actually is and the purpose it has been created to carry out. If the debtor here was actually operating the Dolton Lodge business, the court could possibly construe debtor to be a business trust. However, debtor has leased out the management and operation of the lodge to a corporation not a party to this litigation. Debtor has not sold any securities, has no trade creditors, does not carry on any business, has no board of directors, has no management power and has executed no certificates of participation. The primary purpose of the trust is merely to hold title to the property. Therefore, there is no business trust before this court and no business to reorganize. . . ."

22 B.R. 918, 925

In *In re Tru Block Concrete Products, Inc.*, 27 B.R. 486 (S.D.Cal.1983) the Court concluded that a liquidating trust could qualify for relief, after extensive review of the business trust requirement under the statute. The Court noted that the eligibility under the Bankruptcy Act of a trust was similar to provisions under the tax provisions of the Internal Revenue Code, and concluded that the test under the Bankruptcy Code was similar. Relying on tax cases, the Court noted that "[a] trust does not engage in business if its sole or principal objective is the liquidation of a trust or estate." Page 389. The Court then reviewed the debtor's status under California law and determined that the debtor qualified as a business trust under California law, inasmuch as it was, *inter alia,* the

"alter ego" of the predecessor corporation, was recognized and taxed as a corporation, and had shareholders. Accordingly, relief was allowed.

The case of *In re Gonic Realty Trust*, 50 B.R. 710 (Bkrtcy.1985) similarly reviews the case law but concludes that a different test exists under the Code for qualifying than under the prior Act. The *Gonic* Court concluded that the lack of transferable shares was no longer a relevant determining factor, reaching a different result than *Tru Block*. The Court reviewed the case law and concluded:

"The decisions do uniformly rule that a trust must be found to be 'conducting a business' of some kind in order to come within the statute. While the language in some of the opinions may be read as setting forth a definitive list of essential factors to constitute a business trust, I take the actual basis of decision in such cases to be the use of those factors to support the evidentiary conclusion that the trust in question was actually operating a business in the commonly accepted meaning of such activity."

50 B.R. 710, 713.

In *In re Margaret E. DeHoff Trust I*, 114 B.R. 189 (Bkrtcy.W.D.Mo.1990) a trust created for estate planning purposes was held ineligible for relief. In its analysis, the Court noted:

"A business trust is something more than a trust that carries on business activities. *Hecht v. Malley*, 265 U.S. 144 [44 S.Ct. 462, 68 L.Ed. 949] (1924). Distinguishing characteristics of a business trust include:

1. a trust created and maintained for a business purpose;

2. title to property held by a trustee;

3. centralized management;

4. continuity uninterrupted by death of beneficial owners;

5. transferable certificates of interest; and

6. limited liability.

*Morrissey v. Commissioner*, 296 U.S. 344 [56 S.Ct. 289, 80 L.Ed. 263] (1935)."

114 B.R. 189, at 191.

The Court in *In re Medallion Realty Trust*, 103 B.R. 8 (Bkrtcy.D.Mass.1989) reviewed the history of the exclusion of non-business trusts in some detail, noting a division in the case law. Discarding the traditional tests set forth in *Morrissey, supra*, the Court arrived at a somewhat simpler test, stated as follows:

"I conclude, therefore, that Congress intended to permit bankruptcy relief for all trusts which are created for the purpose of transacting business and whose beneficiaries make a contribution in money or money's worth to the enterprise, without regard to whether the trust has characteristics of a corporation such as separate certificates of ownership...."

103 B.R. 8, 11–12.

The Court in *Medallion Realty* concluded that the nominee trust at issue there had characteristics of both a partnership and a business trust and was therefore eligible for relief. *Compare: In re Village Green Realty Trust*, 113 B.R. 105 (Bkrtcy.D.Mass.1990).

Some of the foregoing cases look to state law for assistance; *e.g., Village Green, Medallion Realty*, and *Gonic*. This Court finds no Louisiana statutory or decisional authority to define, much less equate, a "business" trust and a "liquidating" trust. Nor was the trust instrument filed in evidence. Applying the limited evidence before the Court of the nature of this debtor, to what this Court perceives as the common definitional thread in the jurisprudence, i.e., the operation of a "business" in the ordinary sense of that term, it can scarcely be doubted that the debtor was created for the purpose of termination of the business of its predecessor, not for its continuation. In plain, everyday terms, its creation is owed to an intention to go out of, rather than continue in, business. Debtor has in its own words no "routine business;" it was formed solely to change the nomenclature of its predecessor, suspend its operations, qualify for favored tax treatment regarding the transfer, and provide a vehicle for carrying out the contract of sale. Memorandum, page 4, *supra*. Only *Tru Block, supra*, is favorable to

debtor, but the holding rests largely on that Court's determination that the debtor's purpose of winding up the affairs of its predecessor was authorized under state law, a showing not made here.

Debtor argues in its memorandum in support of its position as follows: "Inasmuch as a plan has not been confirmed in this matter, the possibility exists that the debtor could have ... [the Assets Purchase Agreement] rejected as an executory contract. The debtor would then certainly be wholly rehabilitated and involved in an ongoing business." Page 15–16. Debtor cannot be allowed to so bootstrap itself into bankruptcy eligibility.

Nothing in the Supreme Court's recent *Toibb* decision compels a different result. That case dealt with the eligibility of an *individual* for chapter 11 relief, not with that of a non-business trust.

Having reached the determination that Hemex is ineligible for relief, these reasons for Decision need not address the contentions of Baxter that this case was filed in bad faith.

## CONCLUSION

For the reasons set forth above, the Motion to Dismiss will be granted. A separate, conforming order will enter.