**In re IONOSPHERE CLUBS, INC. and Eastern Air Lines, Inc. and Bar Harbor Airways, Inc., d/b/a Eastern Express.**

**FIRST FIDELITY BANK, NATIONAL ASSOCIATION, NEW JERSEY, Plaintiff,**

v.

**EASTERN AIR LINES, INC., as debtor and debtor-in-possession and Martin R. Shugrue, Jr., as Chapter 11 Trustee, Defendants.**

**Bankruptcy Nos. 89–B–10448 (BRL), 89–B–10449 (BRL) and 91–B–10287 (BRL). Adv. No. 91–6164A.**

United States Bankruptcy Court, S.D. New York.

Oct. 30, 1992.

---

Riker, Danzig, Scherer, Hyland & Perretti by Warren J. Martin, Jr., Morristown, N.J., for First Fidelity Bank, N.A., New Jersey.

King & Spaulding by Daniel J. King, New York City, for Martin R. Shugrue, Jr., Chapter 11 Trustee.

## MEMORANDUM DECISION ON PLAINTIFF AND DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

BURTON R. LIFLAND, Chief Judge.

The plaintiff, First Fidelity Bank, National Association, New Jersey ("First Fidelity"), seeks a determination that its lien on certain aircraft leased to Eastern Air Lines, Inc. ("Eastern") pursuant to a Secured·Equipment Indenture and Lease Agreement dated November 15, 1986, extends to twenty-two Traffic Alert and Collision Avoidance Systems (the "TCAS systems"). Eastern installed the TCAS systems in the aircraft but removed them prior to returning the aircraft to the plaintiff. The plaintiff and defendant have each moved for summary judgment.

### I. Statement of Facts

Each of the parties has submitted a statement of material facts in accordance with Local Bankruptcy Rule 13(h)[1]. First Fidelity serves as Collateral Trustee (the "Collateral Trustee") under a certain Secured Equipment Indenture and Lease Agreement, dated November 15, 1986 (the "Indenture"), between First Fidelity and Eastern.[2] Under the Indenture, Eastern

obtained five hundred million dollars ($500,000,000) in secured financing by causing three series of Secured Equipment Certificates to be issued and sold to the public (collectively, the·"Certificates"). To secure Eastern's repayment of the Certificates, Eastern granted to First Fidelity all of Eastern's right, title and interest in a certain pool of aircraft, aircraft engines and other equipment, as defined in the Indenture (the "Collateral Aircraft"). Simultaneously, First Fidelity "leased" the Collateral Aircraft back to Eastern.[3]

After First Fidelity delivered the Collateral Aircraft to Eastern, the Federal Aviation Administration (the "FAA") promulgated Federal Air Regulation 121.356 ("FAR 121.356"). See 14 C.F.R. § 121.355 (1992). FAR 121.356 required Eastern to equip twenty per cent (20%) of its fleet with TCAS systems by December 30, 1990. Id. Eastern subsequently decided to equip twenty-two of the Collateral Aircraft with TCAS systems to comply with FAR 121.356.

A TCAS system is designed to warn the pilot of potential ground and mid-air obstacles and to suggest a route so as to avoid a potential collision. A TCAS system is made up of several components, including a Mode S transponder, two vertical speed indicators, a color weather radar unit and a computer processor (the "processor"). When the Collateral Aircraft were delivered to Eastern, each aircraft was already equipped with a transponder capable of "Mode A" and "Mode C" interrogation, two vertical speed indicators, and a black and white radar unit. Eastern removed these parts from twenty-two of the Collateral

---

1. S.D.N.Y. Local Bankruptcy Rule 13(h) instructs a party moving for summary judgment to submit a concise statement of the material facts as to which it contends there are no genuine issues to be tried. The party opposing the motion, in turn, is required to submit a statement of material facts as to which it contends there are genuine issues to be tried. All material facts set forth in the moving party's statement are deemed to be admitted unless controverted by the opposing party's statement.

2. First Fidelity was appointed Collateral Trustee pursuant to a Second Supplemental Indenture

dated February 13, 1987. Familiarity with this Court's previous opinion discussing the relationship between Eastern and the Collateral Trustee is assumed. See *First Fidelity Bank, National Association, New Jersey v. Midlantic National Bank (In re Ionosphere Clubs, Inc.),* 134 B.R. 528 (Bankr.S.D.N.Y.1991).

3. As noted in a previous opinion, "[a]lthough the transaction was called a sale/leaseback ... the parties do not dispute that it was not in fact a true lease, but a secured financing." *In re Ionosphere,* 134 B.R. at 529 n. 3.

Aircraft, put the replaced components in storage, and installed TCAS systems in those Collateral Aircraft. The functions and capabilities of each of the respective components are discussed in Part III of this opinion.

Eastern filed for Chapter 11 protection on March 9, 1989, and subsequently failed to make four post-petition semi-annual interest payments to First Fidelity. On January 24, 1991, this Court entered a Stipulation and Order pursuant to which Eastern agreed to turnover the Collateral Aircraft to First Fidelity. Prior to returning the Collateral Aircraft, Eastern removed the TCAS systems and reinstalled the transponders, vertical speed indicators and black and white radar sets which it had placed in storage. First Fidelity subsequently delivered seventeen (17) of the Collateral Aircraft to Midway Airlines. The FAA examined the aircraft and determined that Midway could not operate the aircraft because of Midway's potential fleet failure with respect to FAR 121.356 compliance. In connection with the Midway transaction, First Fidelity purchased seventeen TCAS systems from Eastern for a total sales price of $612,000, and reinstalled the TCAS systems in the Collateral Aircraft. This purchase and sale of the TCAS systems was made without prejudice to First Fidelity's rights to assert ownership of the TCAS systems and to receive a refund of the purchase price.

In September 1991, First Fidelity commenced this adversary proceeding against Eastern and Martin R. Shugrue, Jr., the Eastern Trustee, seeking a determination that First Fidelity holds a valid lien in the twenty-two TCAS systems which Eastern installed and subsequently removed from the Collateral Aircraft. Eastern and First Fidelity have each moved for summary judgment.

## II. Summary Judgment

The plaintiff and the defendant have each moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), which is made applicable to adversary proceedings in bankruptcy cases pursuant to Federal Rule of Bankruptcy Procedure 7056. Based upon the parties' Rule 13(h) statements it appears that there are material facts in dispute regarding the value of the TCAS systems and the Collateral Aircraft, respectively. Therefore, summary judgment is inappropriate with respect to those legal issues which depend upon a determination of these questions of fact as to value. *See Schering Corp. v. Home Insurance Company*, 712 F.2d 4, 9 (2d Cir.1983) (upon a motion for summary judgment it is not the court's function to try issues of fact but rather to determine whether there are issues to be tried). *However*, as several distinct legal issues are not related to the valuation dispute, this motion is ripe for partial summary judgment pursuant to Rule 56(c).

Rule 56 provides that summary judgment shall be granted to the moving party if the court determines that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 599, 106 S.Ct. 1348, 1362–63, 89 L.Ed.2d 538 (1986).

## III. Discussion of Law

Pursuant to the Indenture, the Collateral Trustee acquired all of Eastern's right, title and interest in the Collateral Aircraft. Indenture § 3.01. The term Collateral Aircraft is defined in the Indenture to include Airframes, and the term Airframes, in turn, is defined to include Parts. Indenture § 1.01. The parties agree that the components which were installed prior to TCAS system installation, and which were subsequently removed, constituted Parts under the Indenture and were subject to the Collateral Trustee's lien. The

central legal issue in this adversary proceeding is whether certain TCAS system components are also subject to the Collateral Trustee's lien.

Although the Indenture spans 176 pages, the parties agree that this dispute involves the interpretation of section 5.08(a) of the Indenture. Section 5.08(a) provides that upon Eastern's installation of a replacement part:

(i) title to the replaced Part shall thereupon vest in the Company [Eastern], free of all rights of the Indenture Trustee ..., (ii) title to such replacement Part shall thereupon vest in the Indenture Trustee ... and (iii) such replacement Parts shall become subject to the terms and conditions of this agreement and deemed part of such Airframe or Engine.

Indenture § 5.08(a). Section 5.08(a) further provides that under certain circumstances Eastern could remove certain Parts and that after removal these items would no longer be subject to the Collateral Trustee's lien. The Indenture states that Eastern could remove a Part from the Collateral Aircraft free and clear of the Collateral Trustee's lien if the following test is satisfied (the "Indenture Test"):

(1) The Part was not installed or attached to "an Airframe or Engine in order to cause such *Airframe or Engine* to be in compliance with any ruling, regulation, order or other action by the FAA[;]" *and*

(2) The Part could be removed without "impairing the airworthiness" of the Airframe or Engine; *and either*

(3) (a) The parts were "additions to and [were] not in replacement or renewal, or substitution for, Parts incorporated or installed in or attached to such Airframe or Engine on the Delivery Date"; *or*

(b) The removal of the Part did "not diminish the value of the Aircraft or Engine from which it [was] removed in any material respect." Indenture § 5.08(a) (emphasis added).

A. Compliance with FAA Regulations

As noted above, Eastern could not remove a Part free and clear of the Collateral Trustee's lien if the part was installed to "cause *such* Airframe or Engine to be in compliance with" any FAA regulation. Indenture § 5.08(a) (emphasis added). The regulation at issue, FAR 121.356, required Eastern to equip twenty percent (20%) of its fleet with TCAS systems prior to December 30, 1990. 14 C.F.R. § 121.355. Eastern was not required to equip all of its aircraft with TCAS systems until December 30, 1993. *Id.* Therefore, when Eastern operated the Collateral Aircraft, FAR 121.356 was *a fleet*, and *not an aircraft*, specific regulation. The TCAS systems were not installed to insure that any particular aircraft complied with the FAA regulation, but so that Eastern's entire fleet of aircraft, approximately eighty per cent of which were not equipped with TCAS systems, complied with FAR 121.356. As the TCAS systems were not installed to cause individual aircraft to comply with a FAA regulation, Eastern has satisfied the Indenture Test's first element.

B. Airworthiness of Collateral Aircraft

The Indenture Test's second element provides that Eastern could remove the TCAS systems free and clear of the Collateral Trustee's lien if such removal did not impair the airworthiness of the Collateral Aircraft. Eastern has satisfied this element. Eastern had received airworthiness certificates from the FAA for the Collateral Aircraft before they were equipped with the TCAS systems, and such certificates remained in effect after the TCAS systems were removed. Furthermore, the Collateral Trustee has failed to adduce any evidence that Eastern failed to maintain the Collateral Aircraft in an airworthy condition in accordance with FAA promulgated maintenance schedules.

The removal of the TCAS systems, even in light of the dictates of FAR 121.356, did not render the Collateral Aircraft any less airworthy. As previously noted, FAR 121.356 did not require an air carrier to install TCAS systems in all aircraft until December 30, 1993. 14 C.F.R. § 121.356. The FAA's finding that Midway could not operate the Collateral Aircraft was based upon the proportion of TCAS system equipped

aircraft which Midway operated, and was not a determination that the Collateral Aircraft were not airworthy. Therefore the removal of the TCAS systems did not impair the airworthiness of the Collateral Aircraft.

#### C. TCAS Systems as Replacement Parts or Additions

The Indenture Test's third element provides that Eastern could remove the TCAS systems free and clear of the Collateral Trustee's lien if the TCAS system components were either additions to the Collateral Aircraft, and not in replacement or renewal for parts which were installed when the Collateral Aircraft were delivered to Eastern, *or* if the TCAS systems' removal did "not diminish the value of the Aircraft or Engine ... in any material respect[.]" Indenture § 5.08(a).

##### 1. *Vertical Speed Indicators, Transponders & Radar Units*

Upon delivery to Eastern, each Collateral Aircraft was equipped with a transponder capable of "Mode A" and "Mode C" interrogation, two vertical speed indicators, and a black and white radar unit. These parts were removed, and the TCAS system vertical speed indicators, Mode S transponders, color radar weather units and processors, were installed. As demonstrated by the depositions and affidavits submitted by the parties, there is no dispute regarding the functions and capabilities of the respective components. *See* Deposition of Jerry Hale (Director, Contracts and Administration, Eastern Air Lines, Inc.); Affidavit of Amos Ginor (Collateral Trustee's aviation consultant). The transponders capable of both "Mode A" and "Mode C" interrogation communicate information which enables ground control radar to track the aircraft's flight number, location and altitude. The TCAS system's Mode S transponder carries out these Mode A and Mode C functions, and also permits a TCAS equipped aircraft to determine the location of other aircraft in the area. A vertical speed indicator indicates the rate at which an aircraft is rising or falling. The TCAS system verti-

cal speed indicators carry out this function and interface with the TCAS processor to inform a pilot to ascend or descend so as to avoid a collision. The TCAS system color radar unit carries out the same functions as a black and white unit and also serves several TCAS functions. In addition, the color unit can detect storms and display turbulence.

The foregoing discussion reveals that while the TCAS system Mode S transponders, vertical speed indicators and color radar units performed several functions which were beyond the respective capabilities of their less advanced counterparts, they performed the same functions as the parts which they replaced. In fact, these TCAS system components occupied the same slots on the flight deck as their non-TCAS system components. In view of the foregoing, the Court finds that the TCAS system vertical speed indicators, Mode S transponders and color weather radar units are replacement parts pursuant to the terms of the Indenture. As such, Eastern was not permitted to remove these components free and clear of the Collateral Trustee's lien under the first part of the Indenture Test's third element.

##### 2. *TCAS System Processors*

The TCAS system processor is the "brains" of the system and the Collateral Aircraft did not have any equipment equivalent to the processor prior to TCAS system installation. Therefore the TCAS system processor was an addition, and not a replacement part, and Eastern was entitled to remove the processor from the Collateral Aircraft free and clear of First Fidelity's lien.

#### D. Effect of TCAS System Removal on Value of Collateral Aircraft

The second half of the Indenture Test's third element provides that replacement parts could be removed free and clear of the Collateral Trustee's lien if such removal did "not diminish the value of the Aircraft or Engine from which it [was] removed in any material respect." Indenture

§ 5.08(a). The Court cannot determine whether the removal of the TCAS system vertical speed indicators, Mode S transponders and color radar weather units, respectively, diminished the value of the aircraft because there are disputed issues of material fact with respect to the value of these TCAS system components and the Collateral Aircraft.

### IV. Conclusion

Therefore, in view of the foregoing, the Court concludes as follows:

1. The TCAS systems were not installed to comply with a FAA regulation.

2. Removal of the TCAS systems did not impair the airworthiness of the Collateral Aircraft.

3. The TCAS system processors were additions to, and not replacement parts, with respect to the Collateral Aircraft.

4. Therefore, in view of conclusions 1—3, Eastern's motion is granted, and First Fidelity's motion is denied, with respect to removal of the TCAS system processors free and clear of the Collateral Trustee's lien.

5. The TCAS system vertical speed indicators, Mode S transponders and color radar units were not additions to the Collateral Aircraft, but were replacement parts pursuant to the terms of the Indenture.

6. The remaining disputed issue is whether removal of the TCAS system vertical speed indicators, Mode S transponders, and color radar units diminished the value of the Collateral Aircraft. As previously noted, this issue cannot be determined in the context of the instant summary judgment motions.

7. Therefore, in view of conclusions 5 & 6, Eastern and First Fidelity's motions are denied with respect to whether Eastern was permitted to remove the TCAS system vertical speed indicators, Mode S transponders and color radar units free and clear of the Collateral Trustee's lien.

8. If Eastern can demonstrate, at trial, that the removal of the TCAS system vertical speed indicators, Mode S transponders and color radar units did not diminish the value of the Collateral Aircraft in any material respect, then Eastern was permitted to remove such components free and clear of the Collateral Trustee's lien. However, if First Fidelity demonstrates that the removal of such parts did diminish the value of the Collateral Aircraft, then these TCAS system components are subject to the Collateral Trustee's lien.

Submit an order consistent with this opinion.