**In re SECURED EQUIPMENT TRUST OF EASTERN AIR LINES, INC., Debtor.**

Bankruptcy No. 91–B–11901 (BRL).

United States Bankruptcy Court, S.D. New York.

April 16, 1993.

Butler, Fitzgerald & Potter by Raymond Fitzgerald, Claudia Conway, New York City, for petitioning creditors, LNC Investments, Inc., Charter Nat. Life Ins. Co. Magten Asset Management Corp.

Riker, Danzig, Scherer, Hyland & Perretti by Dennis J. O'Grady, Morristown, N.J., for Collateral Trustee, First Fidelity Bank, N.A., New Jersey.

Bruce Roswick by Bruce Roswick, New York City, for Collateral Trustee, First Fidelity Bank, N.A., New Jersey.

Skadden, Arps, Slate, Meagher & Flom by Mark Gross, New York City, for First Series Trustee, Midlantic Nat. Bank.

Clapp & Eisenberg, P.C. by Salvatore T. Alfano, Newark, NJ, for Second Series Trustee, United Jersey Bank.

Gibson, Dunn & Crutcher by Mitchell Karlan, Nancy Gillespie, New York City, Attorneys for Third Series Trustee, Shawmut Bank Connecticut, N.A.

Weil, Gotshal & Manges by Matthew A. Cantor, New York City, for Martin R. Shu-

grue, Jr., Trustee for the Estate of Eastern Air Lines, Inc.

## MEMORANDUM DECISION ON MOTION TO DISMISS INVOLUNTARY PETITION

BURTON R. LIFLAND, Chief Judge.

First Fidelity Bank, N.A., New Jersey ("First Fidelity"), the Collateral Trustee of the Eastern Air Lines, Inc. Secured Equipment Trust (the "Secured Equipment Trust" or "Trust"), moves to dismiss an involuntary petition filed against the Trust on the grounds that the Trust is not an eligible debtor under the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1993) (the "Code").

### I. Background

#### A. Statement of Facts

Eastern Air Lines, Inc. ("Eastern") and First Fidelity executed a Secured Equipment Indenture and Lease Agreement dated as of November 15, 1986 (the "Indenture"). The Indenture created the Secured Equipment Trust to secure the payment of $500 million in face amount of Secured Equipment Certificates, see Indenture at 1, issued in three series, as follows: First Priority Secured Equipment ("First Series") Certificates in an aggregate principal amount of $200 million due November 15, 1993 and bearing interest at the rate of 11¾% per annum; Second Priority Secured Equipment ("Second Series") Certificates in an aggregate principal amount of $200 million due November 15, 1996 and bearing interest at the rate of 12¾% per annum; and Third Priority Secured Equipment ("Third Series") Certificates in an aggregate principal amount of $100 million due November 15, 2001 and bearing interest at the rate of 13¾% per annum.

On February 18, 1987, the Indenture was amended through a Second Supplemental Indenture to provide for, among other things, the appointment of First Fidelity as Collateral Trustee (First Fidelity is also referred to as the "Collateral Trustee") and

separate trustees for each series of certificates. Midlantic National Bank was appointed First Series Trustee, United Jersey Bank as Second Series Trustee, and First Jersey National Bank as Third Series Trustee. Shawmut Bank Connecticut, N.A., formerly known as Connecticut National Bank, subsequently replaced First Jersey National Bank.

The Collateral Trustee conveyed the proceeds from the sale of the Secured Equipment Certificates to Eastern in exchange for all of Eastern's "right, title and interest" in a certain pool of aircraft and aircraft engines (the "Collateral Pool"). *Id.* § 3.01. The Collateral Trustee subsequently leased the Collateral Pool to Eastern in exchange for rental payments designed to equal the amount of principal, premium and interest on all outstanding Secured Equipment Certificates and any fees and expenses of the Collateral Trustee and Series Trustees. *Id.* §§ 4.01, 4.02.[1]

The Indenture instructs the Collateral Trustee to distribute Eastern's rental payments to the Certificateholders in accordance with the priorities set forth in the Indenture, *id.* § 3.08, and to return any rental payments in excess of amounts due under the Indenture to Eastern. *Id.* § 3.09(b). The Indenture also provides that upon payment in full by Eastern, title to the Collateral Pool would be reconveyed to Eastern and the Trust dissolved. *Id.* §§ 3.08, 3.09.

On March 9, 1989, Eastern filed a voluntary petition for relief under Chapter 11 of the Code. Eastern ceased making timely rental payments after May 15, 1989 and terminated its commercial flight operations on January 19, 1991. On or about January 23, 1991, Martin R. Shugrue, Jr., the Eastern Chapter 11 trustee, entered into a stipulation with the Collateral Trustee pursuant to which Eastern transferred 67 aircraft, 165 aircraft engines and approximately $230 million in proceeds, resulting from Eastern's sale and lease of Collateral Pool equipment, to the Trust. Since January 24, 1991, the Collateral Trustee, in accordance with its rights and powers under the Indenture, has actively managed, maintained, marketed, leased and sold certain Collateral Pool equipment. *See id.* § 7.02. The Collateral Trustee has retained counsel, accountants and an aviation consultant to assist it in the stewardship of the entrusted property and projects that an effective marketing program with respect to the liquidation of the remaining Collateral Pool will take several years to complete.[2]

**B. Procedural History**

On March 28, 1991, LNC Investments, Inc., Charter National Life Insurance Company and Magten Asset Management Corporation (collectively, the "Petitioning Creditors") filed an involuntary Chapter 11 petition (the "Petition") against the Secured Equipment Trust in the Bankruptcy Court for the District of New Jersey. The Petitioning Creditors hold $54.2 million in aggregate principal amount of Second and Third Series Certificates. The Resolution Trust Corporation, which holds approximately $35.5 million in aggregate principal amount of Second and Third Series Certificates, subsequently joined the Petitioning Creditors. The Collateral Trustee moved to dismiss or transfer the case, and on April 24, 1991, the Bankruptcy Court for

---

**1.** As noted in two previous opinions, although the Indenture refers to this transaction as a sale/leaseback, there is no dispute that it was a secured financing. *See First Fidelity Bank, N.A., New Jersey v. Eastern Air Lines, Inc. (In re Ionosphere Clubs, Inc.),* 147 B.R. 325, 326 n. 3 (Bankr.S.D.N.Y.1992); *First Fidelity Bank, N.A., New Jersey v. Midlantic Nat'l Bank (In re Ionosphere Clubs, Inc.,* 134 B.R. 528, 529 n. 3 (Bankr. S.D.N.Y.1991), *appeal docketed,* No. 91–5238 (S.D.N.Y. March 2, 1992). Familiarity with these opinions discussing the Trust and the Secured Equipment Certificates is assumed.

**2.** Although the parties engaged in various discovery disputes and presented evidence during the March 8, 1993 hearing, the material facts with respect to the Trust's operations are not in dispute. For example, the parties agree that the Trust sold 5 aircraft and 16 engines between February 29, 1992 and September 30, 1992. A detailed account of the Trust's finances is contained in Coopers & Lybrand's Report to First Fidelity Bank, N.A., New Jersey, as Collateral Trustee for Eastern Air Lines, Inc. Secured Equipment Certificates, dated September 30, 1992. *See* First Fidelity Exhibit 4.

the District of New Jersey transferred the case to this Court.

On May 10, 1991, this Court held that the Petitioning Creditors had filed the Petition in bad faith and required the Petitioning Creditors to post a $10 million bond by May 15, 1991 in order to maintain this involuntary proceeding (the "May 10 Order"). The Petitioning Creditors failed to post the bond and the Petition was dismissed on May 23, 1991 (the "May 23 Order"). The Petitioning Creditors successfully appealed this Court's rulings, and on October 8, 1992 the District Court vacated this Court's May 10 and May 23 Orders and remanded the case to this Court. *LNC Investments, Inc. v. Secured Equipment Trust of Eastern Air Lines, Inc. (In re Secured Equipment Trust of Eastern Airlines, Inc.)*, 1992 WL 295943 (S.D.N.Y.1992).

The Collateral Trustee has renewed its motion to dismiss the Petition and the Second Series Trustee has joined in that motion. Both movants assert that the Trust is not an eligible debtor under the Code. The Petitioning Creditors and the Third Series Trustee oppose the motion.

## II. *Discussion*

■ The parties filing an involuntary petition have the ultimate burden to establish that this Court has jurisdiction because the alleged debtor is an eligible debtor under the Code. *See In re Braten*, 99 B.R. 579, 583 (Bankr.S.D.N.Y.1989); *see also In re Caucus Distributors, Inc.*, 83 B.R. 921, 930 n. 10 (Bankr.E.D.Va.1988) (collecting cases); *cf. World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In re Chargit Inc.)*, 81 B.R. 243, 247 (Bankr. S.D.N.Y.1987) ("It is the burden of the party alleging Bankruptcy Court jurisdiction to establish the existence of that Court's jurisdiction over the matter in dispute.") The Petitioning Creditors assert that the Secured Equipment Trust is eligible for relief under chapter 11 because it is a "business trust" pursuant to § 101(9)(A)(v) of the Code. Although a business trust can be a debtor, *see* 11 U.S.C. §§ 109(a), 101(41), 101(9)(A)(v), the Collateral Trustee and the Second Series

Trustee assert that the Secured Equipment Trust is not a business trust.

The Code does not define the term "business trust" and the corresponding legislative history does not provide any guidance with respect to the identification of a business trust. In order to find the " 'ordinary, contemporary, common meaning' " of the term "business trust," *see Pioneer Inv. Servs. Co. v. Brunswick Assoc., Ltd. Partnership (In re Pioneer Inv. Servs. Co.)*, ── U.S. ──, ──, 113 S.Ct. 1489, 1496, 123 L.Ed.2d 74 (1993) (quoting *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979)), courts have frequently turned to the common law and found that a business trust is an unincorporated business organization managed by trustees for the benefit and profit of persons who hold beneficial interests in either the trust's corpus or income generated from such corpus. *In re Woodsville Realty Trust*, 120 B.R. 2, 4 (Bankr.D.N.H. 1990); *Westchester County Civil Serv. Employees Assoc., Inc. Benefit Fund v. Westchester County (In re Westchester County Civil Serv. Employees Assoc., Inc.)*, 111 B.R. 451, 456 (Bankr.S.D.N.Y. 1990). "Unlike an ordinary trust, the object of the ... business trust is not to hold and conserve property, but to provide a medium for the conduct of business and the sharing of gains." *Merrill v. Abbott (In re Independent Clearing House Co.)*, 41 B.R. 985, 991 n. 2 (Bankr.D.Utah 1984), *aff'd*, 62 B.R. 118 (D.Utah 1986).

The Third Series Trustee asserts that applicable caselaw establishes the following three-prong test for the identification of a business trust. According to the Third Series Trustee, a business trust must:

(a) legitimately and actively engage in business activity;

(b) have some attributes of a corporation; and

(c) be formed for a business, as opposed to donative, purpose.

Opposition of Shawmut Bank Connecticut, N.A., to the Application of First Fidelity to Dismiss the Involuntary Petition, dated March 3, 1993, at 4 (citations omitted). The Court declines to apply this test which has

neither been adopted nor applied by any court, and resembles a collection of criteria conveniently culled from a number of cases.

■ The Third Series Trustee is correct, however, in noting that while a trust must engage in business activity to qualify as a business trust, *In re Gonic Realty Trust*, 50 B.R. 710, 713 (Bankr.D.N.H.1985), *modified on other grounds, In re Woodsville Realty Trust*, 120 B.R. 2, 5 (Bankr.D.N.H. 1990), such activity, without more, does not demonstrate that a trust is a business trust. *In re St. Augustine Trust*, 109 B.R. 494, 496 (Bankr.M.D.Fla.1990). For example, simple land trusts which hold title to property, and whose purpose is to protect and conserve the trust res, do not qualify as business trusts. *In re Ralph Faber Trust*, 113 B.R. 599, 601 (Bankr.D.N.D. 1990); *In re Dolton Lodge Trust No. 35188*, 22 B.R. 918, 923 (Bankr.N.D.Ill. 1982). Similarly, administrative trusts, which are designed to transfer funds from one entity to another, are generally not considered to be business trusts under the Code. *See In re Westchester County Civil Serv.*, 111 B.R. at 456 (trust established to administer employee benefit plan did not qualify as business trust); *In re Cahill*, 15 B.R. 639, 640 (Bankr.E.D.Pa.1981) (trust established to administer pension plan did not qualify as business trust); *but see In re Affiliated Food Stores, Inc. Group Benefit Trust*, 134 B.R. 215 (Bankr. N.D.Tex.1991) (trust established to administer employee benefit plan found to be a business trust).

■ A trust, in order to be characterized as a business trust, must also transact business for the benefit of investors. *In re Westchester County Civil Serv.*, 111 B.R. at 456; *In re Medallion Realty Trust*, 103 B.R. 8, 11 (Bankr.D.Mass.1989), *aff'd*, 120 B.R. 245 (D.Mass.1990). A trust confers a benefit, as a business trust, when the purpose of the trust's business activities is to generate a profit. *Merrill v. Allen (In re Universal Clearing House Co.)*, 60 B.R. 985, 992 (D.Utah 1986); *In re Westchester County Civil Serv.*, 111 B.R. at 456. While the trust need not actually earn a profit, *In re Universal Clearing House Co.*, 60 B.R. at 992, it must be established to either seek a profit, *In re Treasure Island Land Trust*, 2 B.R. 332, 334 (Bankr. M.D.Fla.1980); *Denmark Cheese Ass'n v. Hazard Advertising Co.*, 59 Misc.2d 182, 298 N.Y.S.2d 98, 100 (Sup.Ct.N.Y.County), or to carry on the final affairs of an entity, such as a corporation, which was originally established to generate profits. *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 536 (Bankr.W.D.Tenn.1986) (trust created to wind up the affairs of a predecessor corporation was a business trust); *In re Hemex Liquidation Trust*, 129 B.R. 91, 97–98 (Bankr.W.D.La.1991) (refusing to find a business trust where the entity was not "winding up the affairs of its predecessor"). As one court has explained, "the basic distinction between business and non-business trusts is that business trusts are created for the purpose of carrying on some kind of business or commercial activity for profit; the object of a non-business trust is to protect and preserve the trust res." *In re Treasure Island Land Trust*, 2 B.R. at 334; *accord In re Ralph Faber Trust*, 113 B.R. 599, 601 (Bankr.D.N.D. 1990); *In re Universal Clearing House Co.*, 60 B.R. at 992.

■ To determine whether a trust qualifies as a business trust, courts have looked to the overt purpose of the trust and the trustee's powers. *In re Universal Clearing House Co.*, 60 B.R. at 992. The Indenture expressly provides that the Secured Equipment Trust was created in order to "secure the payment of the Secured Equipment Certificates," Indenture at 1, and the Collateral Trustee's powers are accordingly limited. In the event of default, the Collateral Trustee is authorized to take possession of the Collateral Pool, liquidate its assets by sale or lease, and distribute the proceeds to Certificateholders. *See* Indenture §§ 3.08 & 7.02.

The Trust cannot earn a profit, as any amounts received in excess of the amount due under the Indenture must be returned to Eastern. *Id.* § 3.09(b). The Collateral Trustee's marketing program, which seeks to maximize the return for the Certificate-

holders, is not the equivalent of a profit generating endeavor. The Indenture's clear and unambiguous language, as well as the Collateral Trustee's actions, demonstrate that the Trust was neither established, nor is presently able, to earn a profit. As previously noted, the Trust was established to "secure the payment of the Secured Equipment Certificates[,]" Indenture at 1, and the Collateral Trustee is currently liquidating the Collateral Pool over time in an attempt to do just that.

The Petitioning Creditors assert that the Secured Equipment Trust qualifies as a business trust on the grounds that the Trust is a liquidating trust and cite three cases in support of this position. *See In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531 (Bankr.W.D.Tenn.1986); *In re Captran Creditors Trust*, 53 B.R. 741 (Bankr.M.D.Fla.1985); *In re Tru Block Concrete Prods., Inc.*, 27 B.R. 486 (Bankr. S.D.Cal.1983). While the *Cooper Properties, Captran* and *Tru Block* trusts, respectively, qualified as business trusts under the Code, each is factually distinguishable from the Secured Equipment Trust. The *Cooper Properties, Captran* and *Tru Block* trusts, respectively, were established to wind up the affairs of predecessor corporations originally established as profit generating enterprises. *In re Tru Block Concrete Prods., Inc.*, 27 B.R. at 491; *In re Cooper Properties Liquidating Trust*, 61 B.R. at 536; *In re Captran Creditors Trust*, 53 B.R. at 744. Accordingly, each court found that each trust at issue was conducting the final affairs of an entity that would have been eligible for relief under the Code. The Secured Equipment Trust, on the other hand, was established to facilitate a secured financing and is not winding up the final affairs of Eastern Air Lines, Inc.[3] *Tru Block, Cooper* and *Captran* are therefore inapposite. This Court finds no support or sound authority for the proposition that a liquidating trust is a

business trust when the trust is not conducting the final affairs of a predecessor corporation.

### III. Conclusion

In view of the foregoing, the Petitioning Creditors have failed to demonstrate that the Secured Equipment Trust is a business trust under § 101(9)(A)(v) of the Code. Therefore, the Trust is not an eligible debtor, and First Fidelity's motion to dismiss the Petition is granted.

Submit an Order consistent with the foregoing.

---

**3.** The Collateral Trustee is clearly not winding up Eastern's affairs. It is not disputed that the scope of the Eastern Chapter 11 Trustee's actions in winding up Eastern's affairs is wide ranging, extending far beyond the selling and leasing of aircraft and engines, and is not connected to the activities of the Collateral Trustee.

Furthermore, when the Collateral Pool was created in 1987 it only constituted approximately 37% of Eastern's aircraft. *See* Secured Equipment Certificates Prospectus, dated February 13, 1987, at 30 & 53 (First Fidelity Exhibit 2) (stating that the Collateral Pool consisted of 110 aircraft out of 292 owned by Eastern).