38 F.3d 86
 63 USLW 2263, 26 Bankr.Ct.Dec. 153, Bankr.
L. Rep. P 76,146
 In re SECURED EQUIPMENT TRUST OF EASTERN AIR LINES, INC., Debtor,
SHAWMUT BANK CONNECTICUT, NATIONAL ASSOCIATION LNC
INVESTMENTS, INC.; Charter National Life
Insurance Company; and Magten Asset
Management Corporation, Appellants,
v.
FIRST FIDELITY BANK, as Collateral Trustee, United Jersey
Bank, and Secured Equipment Trust of Eastern
Airlines, Inc., Appellees,
Midlantic National Bank, Defendant.
 Nos. 1923, 1924, Docket Nos. 94-5015, 94-5017.
 United States Court of Appeals,
Second Circuit.
 Argued June 30, 1994.
Decided Oct. 17, 1994.
 
 Mitchell A. Karlan, New York City (Gibson, Dunn & Crutcher, of counsel), for appellant Shawmut Bank Connecticut, N.A.
 Raymond Fitzgerald, New York City (Michael Freeman, Butler Fitzgerald & Potter, P.C., of counsel), for appellants LNC Investments, Inc., Charter Nat. Life Ins. Co., and Magten Asset Management Corp.
 Dennis J. O'Grady, Morristown, NJ (Warren J. Martin, Jr., Donald F. MacMaster, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, Bruce H. Roswick, New York City, of counsel), for appellee First Fidelity Bank, N.A.
 Salvatore T. Alfano, Vincent F. Papalia, Daniel M. Eliades, Clapp & Eisenberg, Newark, NJ filed a brief on behalf of appellee United Jersey Bank.
 Before: KEARSE and ALTIMARI, Circuit Judges, and SCHWARTZ, District Judge*.
 ALTIMARI, Circuit Judge:
 
 
 1
 Appellants appeal from a judgment entered in the United States District Court for the Southern District of New York (Sprizzo, J.) affirming a final order of the United States Bankruptcy Court for the Southern District of New York (Lifland, J.) dismissing an involuntary bankruptcy petition appellants filed against the Secured Equipment Trust of Eastern Air Lines, Inc. (the "Trust"). The Trust was created as part of a secured financing by Eastern Air Lines, Inc. ("Eastern"), and subsequent to Eastern's filing of a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code" or the "Code"), creditors of the Trust filed an involuntary bankruptcy petition against the Trust. The bankruptcy court dismissed the petition on the grounds that the Trust was not eligible for bankruptcy protection. The eligibility determination turned on the bankruptcy court's finding that the Trust did not constitute a "business trust" within the meaning of the Bankruptcy Code. See 11 U.S.C. Sec. 101(9)(A)(v). The district court agreed. On appeal, appellants challenge the bankruptcy court's interpretation of "business trust," claiming that the Trust clearly falls within the Code's use of that term. For the reasons discussed below, we reject appellants' arguments, and affirm the judgment of the district court upholding the bankruptcy court's dismissal of appellants' petition.
 
 BACKGROUND
 
 2
 Eastern, seeking to raise $500 million in financing, created the Trust to facilitate its ability to secure the financing with a lien on a portion of its fleet of aircraft. The Trust was created pursuant to a document entitled "Secured Equipment Indenture and Lease Agreement Between First Fidelity Bank, Indenture Trustee and Eastern Air Lines, Inc." as amended by subsequent supplemental indentures (the "Indenture"). The mechanics of the transaction involved the Trust's sale of $500 million in Trust certificates to investors, the Trust's purchase of a portion of Eastern's fleet (the "Collateral Pool") with the proceeds of the sale, and the lease of the fleet back to Eastern in exchange for rental payments designed to equal the amount of principle, premium, and interest on the certificates. Although the transaction was called a sale/leaseback, there is no dispute that it was a secured financing. See In re Secured Equip. Trust of Eastern Air Lines, Inc., 153 B.R. 409, 411 n. 1 (Bankr.S.D.N.Y.1993).
 
 
 3
 The Trust certificates were sold in three series as follows: First Priority Secured Equipment Certificates in principal amount of $200 million due November 15, 1993 and bearing interest of 11 3/4%; Second Priority Secured Equipment Certificates in principal amount of $200 million due November 15, 1996 and bearing interest of 12 3/4%; and Third Priority Secured Equipment Certificates in principle amount of $100 million due November 15, 2001 and bearing interest of 13 3/4%. The affairs of the Trust as a whole were to be administered by a "Collateral Trustee," and each series of certificates was to be represented by its own "Series Trustee." First Fidelity Bank was appointed Collateral Trustee, and Midlantic National Bank, United Jersey Bank, and First Jersey National Bank (ultimately replaced by Shawmut Bank) were respectively appointed First, Second, and Third Series Trustees.
 
 
 4
 Pursuant to the Indenture, the Collateral Trustee is responsible for collecting the lease payments and distributing them in accordance with the priorities set forth in the Indenture. The Indenture further provides that any rental payments in excess of amounts due under the Indenture be returned to Eastern, and upon payment in full by Eastern, title to the Collateral Pool would be reconveyed to Eastern and the Trust dissolved. Upon a default by Eastern, the Indenture allows the Collateral Trustee to take possession of the Collateral Pool and hold, sell, keep, or lease its components in order to enforce the Indenture.
 
 Procedural History
 
 5
 On March 9, 1989, Eastern filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Eastern subsequently stopped making timely rental payments to the Trust. Each of the Series Trustees filed separate secured proofs of claim in Eastern's bankruptcy for principal, premiums, interest, fees and expenses owed to the Secured Equipment Trust Certificateholders. On January 23, 1991, Eastern's Chapter 11 Trustee entered into a stipulation with the Collateral Trustee pursuant to which Eastern returned certain aircraft to the Trust, and turned over $230 million in proceeds resulting from Eastern's sale and lease of Collateral Pool equipment.
 
 
 6
 Because Eastern defaulted on its rental obligations, the Collateral Trustee, pursuant to powers enumerated in the Indenture, began actively managing, maintaining, marketing, leasing, and selling certain Collateral Pool equipment. The Collateral Trustee retained counsel, accountants, and an aviation consultant to assist in the stewardship of the entrusted property. The Collateral Trustee projects that the liquidation of the remaining Collateral Pool will take several years to complete.
 
 
 7
 On March 28, 1991, three holders of Second and/or Third Priority Secured Equipment Certificates, LNC Investment Inc., Charter National Life Insurance Co., and Magten Asset Management Corporation, filed an involuntary Chapter 11 petition against the Trust in the Bankruptcy Court for the District of New Jersey. These certificateholders hold $54.2 million in aggregate principal amount of Trust certificates. The Resolution Trust Corp., a holder of $35.5 million in aggregate principle amount of Trust certificates, subsequently joined the petition. The Collateral Trustee moved to dismiss or transfer the case, and the case was ultimately transferred to the Southern District of New York (Lifland, J.).
 
 
 8
 After a ruling, appeal, and remand not relevant to the issue on appeal, the Collateral Trustee renewed its motion to dismiss the petition, and the Second Series Trustee, United Jersey Bank, joined the petition (collectively "appellees"). Both claimed that the Trust is not an eligible debtor under the Bankruptcy Code. The petitioning certificateholders and the Third Series Trustee, Shawmut Bank, opposed the motion, claiming that the Trust is a "business trust" eligible for Chapter 11 relief. The bankruptcy court granted the motion to dismiss the petition, finding that the Trust failed to exhibit the elements of a business trust. See In re Secured Equip. Trust of Eastern Air Lines, Inc., 153 B.R. 409 (Bankr.S.D.N.Y.1993). The district court affirmed the bankruptcy court's decision without opinion.
 
 
 9
 The petitioning certificateholders and Shawmut (collectively "petitioners") now appeal.
 
 DISCUSSION
 
 10
 The sole issue on appeal is whether the trust in question is a "business trust" within the meaning of the Bankruptcy Code, thereby making it eligible for bankruptcy protection. Notably, we have never before had to expressly address the definition of "business trust" under the Bankruptcy Code. Furthermore, although many other courts have been called on to make this type of determination, none have been presented with a trust that was created in order to secure the payment of certificates issued in connection with a secured financing. As such, we are faced with an issue of first impression for this and any appellate court.
 
 
 11
 Under the Bankruptcy Code, only a "person" may be an involuntary debtor. 11 U.S.C. Sec. 303(a). The term "person" has been defined to include "corporation," 11 U.S.C. Sec. 101(41), and "corporation" has been further defined to include "business trust," 11 U.S.C. Sec. 101(9)(A)(v). "Business trust" itself, however, is not defined in either the Code or its legislative history.
 
 
 12
 Although no court has thus far adopted a clear definition of business trust for purposes of the Bankruptcy Code, courts have looked to see whether the trust at issue has the attributes of a corporation. See, e.g., In re Woodsville Realty Trust, 120 B.R. 2, 3 (Bankr.D.N.H.1990) ("[S]ince [a business trust] is defined as a type of corporation, it is logical to assume that this entity should have the attributes of a corporation."); In re DeHoff Trust I, 114 B.R. 189, 191 (Bankr.W.D.Mo.1990); In re Faber Trust, 113 B.R. 599, 600-01 (Bankr.D.N.D.1990). Courts have noted a variety of factors in making this determination, see, e.g., In re DeHoff Trust I, 114 B.R. at 191 (listing distinguishing characteristics of a business trust), but there is no definitive list of characteristics that constitute a business trust. See, e.g., In re Gonic Realty Trust, 50 B.R. 710, 712-13 (Bankr.D.N.H.1985) ("[T]he decisions ... do not stand for any general proposition that only if a certain specified list of factors exist may a ... trust be deemed to be a 'business trust' under the applicable statutory provisions.").
 
 
 13
 Clearly, most courts agree that a basic distinction between a business trust and other trusts is that business trusts are created for the purpose of carrying on some kind of business, whereas the purpose of a non-business trust is to protect and preserve the res. See, e.g., In re DeHoff Trust, 114 B.R. at 191; In re Faber Trust, 113 B.R. at 601; In re Treasure Island Land Trust, 2 B.R. 332, 334 (Bankr.M.D.Fla.1980). Furthermore, while a trust must engage in business-like activities to qualify as a business trust, such activity, without more, does not necessarily demonstrate that a trust is a business trust. See In re St. Augustine Trust, 109 B.R. 494, 496 (Bankr.M.D.Fla.1990). Other than these two general points, "[a] uniform body of law has not resulted ... [and] [t]he decisions are, in fact, 'hopelessly divided.' " Cutler v. The 65 Sec. Plan, 831 F.Supp. 1008, 1014 (E.D.N.Y.1993) (citation omitted). Ultimately, each decision is based on a very fact-specific analysis of the trust at issue.
 
 
 14
 Petitioners, who bear the ultimate burden of establishing that the alleged debtor is an eligible debtor under the Bankruptcy Code, see In re Braten, 99 B.R. 579, 583 (Bankr.S.D.N.Y.1989), originally claimed that the activities carried on by the Trust demonstrate that it is a business trust. Specifically, they pointed to the fact that ever since Eastern has been in bankruptcy, the Collateral Trustee has carried on the business of leasing and selling the Collateral Pool property. In so doing, the Collateral Trustee has hired accountants, attorneys, and marketing personnel.
 
 
 15
 The bankruptcy court rejected these arguments and ultimately concluded that because the Trust was established merely to "secure the payment of the Secured Equipment Certificates" and not to generate a profit or to liquidate the final affairs of a company originally established to generate a profit, it was not a business trust. Because the district court affirmed the bankruptcy court's decision for "substantially the same reasons" relied upon by the bankruptcy court, we focus our review upon the bankruptcy court's decision. We review the court's definition of "business trust" de novo, and its factual findings for clear error. See In re Ionosphere Clubs, Inc., 922 F.2d 984, 988-89 (2d Cir.1990) (citations omitted), cert. denied, --- U.S. ----, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).
 
 
 16
 On appeal, petitioners abide by their original arguments, and additionally claim that the bankruptcy court applied an improper test in determining whether the Trust constitutes a business trust. They claim that there are more types of business trusts than the categories the bankruptcy court set forth. Specifically, they cite to three cases wherein the trusts at issue were found to be business trusts yet they were not established to generate a profit or to liquidate a corporation. See The 65 Sec. Plan, 831 F.Supp. at 1017-18; In re Affiliated Food Stores, Inc. Group Benefit Trust, 134 B.R. 215, 217-18 (Bankr.N.D.Tex.1991); In re Michigan Real Estate Ins. Trust, 87 B.R. 447, 449 (E.D.Mich.1988). These three cases focus on the benefits the trust provided to its beneficiaries, without specifically limiting those benefits to profits. For example, in In re Affiliated a self-funded employee benefit plan that provided and maintained health benefits for employees of member stores was deemed a business trust even though it did not operate to generate a profit. See 134 B.R. at 218.
 
 
 17
 Appellees point out that these cases represent only one side of a split in authority, and that several cases have found these types of trusts ineligible for bankruptcy relief. See, e.g., In re Consol. Welfare Fund "ERISA" Litig., 798 F.Supp. 125, 128, n. 4 (S.D.N.Y.1992) (finding employee benefit plan not eligible for bankruptcy relief); In re Westchester County Civil Serv. Employees Assoc., Inc. Benefit Fund, 111 B.R. 451, 456 (Bankr.S.D.N.Y.1990) (same); In re Cahill Assocs. Pension Plan, 15 B.R. 639, 640 (Bankr.E.D.Pa.1981) (finding trust that funded pension plan not eligible for bankruptcy).
 
 
 18
 Regardless of our view on the above controversy, we do not read the bankruptcy court's opinion as foreclosing the possibility that trusts not established to generate a profit may still be considered business trusts. Instead of the narrow interpretation of the bankruptcy court's opinion espoused by petitioners, we interpret the court's reference to trusts that seek profits or carry on the final affairs of a company as merely examples of what the court also refers to as trusts that "transact business for the benefit of investors."
 
 
 19
 Furthermore, regardless of whether generating a profit is a necessary element of a business trust, petitioners cannot dispute that many courts have found the presence or absence of a profit motive influential in their determination of whether the trust at issue was a business trust. See, e.g., In re Walker, 79 B.R. 59, 62 (Bankr.M.D.Fla.1987). As most corporations are established to generate a profit, we too find this factor relevant to our determination of whether the Trust is a business trust. We do not, however, foreclose the possibility that a Trust that was not specifically established to generate a profit may still be considered a business trust.
 
 
 20
 In this case, it is clear that the Trust was not established to generate a profit. Assuming arguendo that the interest the certificateholders are entitled to constitutes profit, a point contested by petitioners, the Trust was not established to generate such interest. Rather, it was established merely to secure the repayment of the certificateholders' loans to Eastern. As such, its purpose was to preserve the interest that the certificateholders had already been guaranteed, not to generate it. Notably, any payments in excess of amounts due under the Indenture were to be returned to Eastern.
 
 
 21
 In any event, aside from the absence of a profit-generating purpose, we still do not believe that the Trust was established to "transact business" as that phrase is commonly interpreted. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, --- U.S. ----, ----, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993) (indicating that the words of the Code are intended "to carry their ordinary, contemporary, common meaning") (quotations omitted). The Indenture makes it clear that the Trust was not established to run a business enterprise, but was merely created to serve as a vehicle to facilitate a secured financing by Eastern. By placing title to the Collateral Pool in one party--the Collateral Trustee--the Trust enabled numerous lenders to receive the benefit of a security interest without the need for multiple security agreements and filings, which would drastically increase transaction costs. Any business activities that the Trust is currently engaged in are incidental to the Trust's sole responsibility of protecting the certificateholders' security interest. Accordingly, keeping in mind that our "inquiry must focus on the trust documents and the totality of the circumstances, not solely on whether the trust engages in a business," In re St. Augustine Trust, 109 B.R. at 496, we find that the Trust is not eligible for bankruptcy protection.
 
 
 22
 None of the cases cited by petitioners convince us otherwise. The liquidating trust cases that petitioners rely on all involve trusts that were established to carry on the final affairs of a corporation. See In re Cooper Properties Liquidating Trust, Inc., 61 B.R. 531, 536 (Bankr.W.D.Tenn.1986); In re Captran Creditors Trust, 53 B.R. 741, 743-44 (Bankr.M.D.Fla.1985); In re Tru Block Concrete Prods., Inc., 27 B.R. 486, 491 (Bankr.S.D.Cal.1983). The Trust was clearly not established for such a purpose; any liquidation that it is conducting is part of its effort to enforce the certificateholders' security interest.
 
 
 23
 We are also unpersuaded by petitioners' claim that the Trust should be considered a business trust because if it is not petitioners will have no other forum to adjudicate their claims. First, we question whether the availability of another forum is a relevant factor to consider in determining whether a trust is a business trust within the meaning of the Bankruptcy Code. More importantly, however, we are unconvinced that petitioners have no other forum to adjudicate their claims. Although petitioners may have no forum in which to seek redress from the Trust for a decline in the value of the Collateral Pool, because the petitioners are actually secured creditors of Eastern, their deficiency claims can be dealt with in Eastern's bankruptcy. In fact, each Series Trustee has already filed a proof of claim on behalf of the certificateholders it represents in Eastern's bankruptcy. Furthermore, the petitioners can assert any claims they may have concerning the Trustees' management of the Trust or distributions thereunder in federal or state court.
 
 
 24
 We have examined petitioners' remaining contentions and find them without merit. In sum, after reviewing the specific facts giving rise to the trust at issue, we believe that it is not a "business trust" within the meaning of the Bankruptcy Code.
 
 CONCLUSION
 
 25
 Based on the foregoing, the judgment of the district court affirming the bankruptcy court's dismissal of appellants' involuntary bankruptcy petition filed against the Trust is affirmed.
 
 KEARSE, Circuit Judge, dissenting:
 
 26
 I respectfully dissent from the majority's conclusion that the Secured Equipment Trust of Eastern Airlines, Inc. (the "Trust"), is not a "business trust" within the meaning of the Bankruptcy Code, see 11 U.S.C. Sec. 101(9)(A)(v) (Supp. V 1993). Thus, I would reverse the decision of the district court that the Trust is not a "person" within the meaning of the Code, see id. Sec. 101(41) (defining person to include corporation); id. Sec. 101(9) (defining corporation to include business trust), and hence cannot be subjected to involuntary bankruptcy proceedings, see 11 U.S.C. Sec. 303(a) (1988).
 
 
 27
 The Trust is an entity in which investors purchased certificates evidencing their respective shares of beneficial ownership. The certificateholders expected to earn a profitable return on their investments. Pursuant to the terms of the Trust Indenture, which provided that it was to be governed by New York law, the Trustee (sometimes referred to as "Collateral Trustee") used the capital raised through the sale of the certificates to purchase aircraft from Eastern Airlines, Inc. ("Eastern"); the Trustee leased the aircraft back to Eastern at rates designed to ensure the certificateholders their agreed rate of return.
 
 
 28
 The Indenture also gave the Trustee considerable powers to deal with the equipment in the event that Eastern defaulted. These included the power to take the aircraft, airframes, engines, or any parts thereof, into the Trustee's possession, the power to sell any or all of this equipment at public or private sale for cash or on credit, and the power to lease any or all of the equipment to others. As events unfolded, the Trustee in fact had to engage in such activities. As of January 24, 1991, the Trust had taken possession of 67 commercial jet aircraft and 165 engines. The Trustee undertook an extensive marketing program for the lease and/or sale of these assets and arranged for their maintenance, repair, insurance, and storage pending such lease or sale. Two years after taking possession of these assets, the Trustee was still managing a fleet of 47 commercial jet aircraft. As the bankruptcy court observed in its April 16, 1993 ruling,
 
 
 29
 [s]ince January 24, 1991, the Collateral Trustee, in accordance with its rights and powers under the Indenture, has actively managed, maintained, marketed, leased and sold certain Collateral Pool equipment.
 
 
 30
 In re Secured Equipment Trust, 153 B.R. 409, 411 (Bkrtcy.S.D.N.Y.1993). In my view, the Trustee was operating a business, and the Trust would be a business trust under New York law, which defines such an entity as "any association operating a business under a written instrument or declaration of trust, the beneficial interest under which is divided into shares represented by certificates." N.Y. General Associations Law, Sec. 2.2.
 
 
 31
 Such an entity appears to be among those Congress meant the Bankruptcy Code to encompass in its definition of "corporation" as including "business trust[s]":
 
 
 32
 (9) "corporation"--
 
 
 33
 (A) includes--
 
 
 34
 (i) association having a power or privilege that a private corporation, but not an individual or a partnership, possesses;
 
 
 35
 (ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
 
 
 36
 (iii) joint-stock company;
 
 
 37
 (iv) unincorporated company or association; or
 
 
 38
 (v) business trust; but
 
 
 39
 (B) does not include limited partnership.
 
 
 40
 11 U.S.C. Sec. 101(9). Although the Code contains no definition of the term "business trust," the legislative history of the term is informative. Prior to the enactment of the Code, the Bankruptcy Act of 1898, as amended (the "Act"), defined corporation to include the same groups eventually listed in Sec. 101(9)(A) of the Code. Instead of using the term "business trust" in haec verba, however, the Act defined corporation to include "any business conducted by a trustee or trustees wherein beneficial interest or ownership is evidenced by certificate or other written instrument." 11 U.S.C. Sec. 1(8) (1976). In enacting the Code in 1978, Congress replaced this language with the term "business trust," and in describing the Code's definition of "corporation," the reports of the Judiciary Committees of both the Senate and the House of Representatives stated that "[t]he definition of 'corporation' ... is similar to the definition in current law, section 1(8)." S.Rep. No. 989, 95th Cong., 2d Sess. 22, reprinted in 1978 U.S.Code Cong. & Admin.News ("USCCAN") 5787, 5808; H.R.Rep. No. 595, 95th Cong., 2d Sess. 309, reprinted in 1978 U.S.C.C.A.N. 5963, 6266. See also 1 J. Moore, Collier on Bankruptcy p 4.20, at 648 n. 5 (14th ed. 1988) (stating that business trusts were included in the Act's definition of corporation by amendment adopted in 1926). Thus, the legislative history reveals that the Code's use of the term "business trust" was intended to include an entity that conducts business through a trustee and issues certificates or other written instruments to evidence beneficial interest or ownership in the entity. Had Congress intended the Code's use of the term "business trust" to be more restrictive than the descriptive language that the term replaced in the Act, I would have expected the legislative history to contain some statement to that effect, and I doubt that Congress would have called the two provisions "similar." Given this history, the Trust at issue here meets the criteria to be considered a business trust under the federal bankruptcy laws.
 
 
 41
 I find the majority's reasons for concluding that the Trust is not a business trust unpersuasive. Though the majority argues that the Trust was formed only to "preserve" the assets securing the investors' loans to Eastern, this Trust plainly is not a typical trust for the simple preservation of assets. The Trust was the vehicle through which financial institutions that agreed to make collateralized loans to Eastern agreed to have the money transferred and the aircraft collateral held, and it is plain from the indenture documents that neither the loans nor the interest payable to the certificateholders existed independent of the Trust. The Trust was established in order to enter into the purchase-and-leaseback transactions that would generate the rental income that created the certificateholders' profits.
 
 
 42
 And though the majority seems to rely most heavily on the fact that any excess profits generated by the purchase-and-leaseback would be payable to Eastern, the Trust plainly was no eleemosynary entity. Its operations were intended to generate a return on certificateholders' investment in the Trust, and while the amount of that return was contractually limited, the certificateholders were still to receive their agreed profit. I fail to see why the agreed profit limitation should remove the Trust from the Code definition of corporation.
 
 
 43
 In sum, I would conclude that a trust whose beneficial owners' interests are reflected by investment certificates, and which was engaged in the purchase and leaseback of equipment and thereafter engaged in the sale and lease of that equipment to others when the original seller/lessee failed to make payments on its lease, is properly viewed as a business trust within the meaning of Sec. 101(9)(A)(v). Accordingly, I would reverse the decision of the district court.
 
 
 
 *
 Hon. Allen G. Schwartz, Judge, United States District Court for the Southern District of New York, sitting by designation